STATE of Tennessee, Appellee,

v.

Ernest MALONE, Jr., Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 31, 1995.

Order Denying Rehearing
Dec. 15, 1995.

Gerald L. Melton, District Public Defender, Jeannie Kaess, Assistant Public Defender, Murfreesboro, for Appellant.

Charles W. Burson, Attorney General and Reporter, Eugene J. Honea, Assistant Attorney General, Criminal Justice Division, Nashville, Guy R. Dotson, District Attorney General, William C. Whitesell, Jr., Paul A. Holcombe, III, Asst. Dist. Attorneys General, Murfreesboro, for Appellee.

## OPINION

SUMMERS, Judge.

The unique facts of this case present novel questions about probation and parole. Appellant's probation was revoked for "testing positive for cocaine, having new criminal convictions, and failing to report." We hold that: (1) the sentencing court retained jurisdiction to revoke probation after appellant was transferred to the Department of Correction (DOC) to serve the remainder of an intervening consecutive sentence; (2) the probationary term was stayed during incarceration and parole; and (3) the trial court had authority to revoke probation for pre-probation conduct of paroled convict.

Appellant was charged with two separate and unrelated indictments (F–26102[1] and F–26381[2]) in the Rutherford County Circuit Court. Although both charges were pending in the same court, Judge J.S. Daniel presided over case no. F–26102 and Judge James K. Clayton, Jr., presided over case no. F–26381. In case no. F–26102, Judge Daniel sentenced appellant to two years. On December 2, 1992, Judge Daniel granted appellant's request for probation by suspending all of his two year sentence in case no. F–26102. In the pending and unrelated case no. F–26381, Judge Clayton denied appellant's request for probation and sentenced him, in March of 1993, to six years incarceration running consecutively to his probation ordered in case no. F–26102.[3]

After serving one year in the local workhouse pursuant to case no. F–26381, appellant wrote Judge Clayton a "Letter of Petition for an Immediate Transfer." In this letter, he waived his right for a suspended sentence hearing, on case no. F–26381, and requested that his paperwork be sent to the DOC. He requested transfer "due to the deplorable state at the county workhouse" and so that he may receive credits. He was subsequently transferred to the DOC where he remained until his release on parole in April 1994.

Following his release on parole, appellant was: (1) convicted of assault and theft over $500.00 in July 1994, (2) arrested for possession of cocaine in November 1994, and (3) convicted of trespassing in January 1995. He also failed to report to his probation officer twelve times between August 25, 1994

---

1. In case no. F–26102 appellant was charged with attempted sale of cocaine occurring on or about July 1992.

2. In case no. F–26381 appellant was charged with eight counts of sale of cocaine under .5 grams occurring between April 1992 and June 1992.

3. Appellant, in case no. F–26381, received three years on each count. The judgment sheets reflects that count one ran consecutively to F–26102, count two ran consecutively to count one, and counts three through six ran concurrently with count two.

and November 22, 1994. On January 3, 1995, he tested positive for cocaine use.

In July 1994, November 1994, and January 1995, Judge Daniel issued warrants for appellant's arrest for violating probation. A probation revocation hearing was held. In February 1995, Judge Daniel revoked appellant's probation in case no. F–26102.

Appellant's first issue challenges the trial court's jurisdiction over his suspended sentence. He asserts that "the trial court lost jurisdiction over [his] sentence when [he] was transferred to the [DOC]."

■ Trial judges have wide latitude in sentencing defendants. We, therefore, look to the intent of the trial judge in permitting the transfer. We find that the trial judge transferred appellant only to serve out the remainder of his incarceration in case no. F–26381. The court, however, did not intend to transfer, to the Board of Paroles, the trial court's supervisory authority over appellant's suspended sentence in case no. F–26102. Furthermore, the record indicates that the parole board did not consider appellant's suspended sentence, in case no. F–26102, when calculating his eligibility for parole.

■ We find it questionable whether the legislature either envisioned or intended to permit trial courts to transfer their supervisory authority over fully suspended sentences to the Board of Paroles.[4] Tenn.Code Ann. § 40–35–309 (1990) permits a trial court to transfer jurisdiction, over supervised probation, to "an appropriate court." This statute, however, does not contemplate that trial courts may transfer their supervisory authority over probation to the Board of Paroles.

■ Contrary to appellant's assertion, Tenn.Code Ann. § 40–35–212(c) (1990) does not permit a trial court to transfer supervision over probation to the DOC. The statute merely states that unless sentenced to "the department, the trial court shall retain full jurisdiction." In case no. F–26102, appellant was not sentenced to probation in the department. Accordingly, the trial court retained jurisdiction over appellant's suspended sentence in case no. F–26102.

Next, we must determine at what point appellant's probationary term commenced when his intervening sentences of incarceration were ordered consecutively to his suspended sentence. On December 2, 1992, appellant's two year sentence was fully suspended. On March 26, 1993, he received, on separate charges, six years incarceration running consecutively to his two year suspended sentence.

■ We find that if appellant's sentences had been ordered concurrently, appellant would have been on probation from December 1992 until December 1994. If the trial judge had stated that probation was to begin upon release from confinement, then appellant, upon release on parole, would have simultaneously been on probation and parole.[5] When a trial judge, however, orders an intervening sentence of incarceration to run consecutively to a suspended sentence, we hold that the probationary term begins upon completion of the intervening custodial sentence and custodial sentence includes both confinement and parole. *See Anderson v. Corall,* 263 U.S. 193, 196, 44 S.Ct. 43, 44, 68 L.Ed. 247 (1923) (holding "[w]hile on parole the convict is bound to remain in the legal custody and under the control of the warden until the expiration of the term. . . . While this is an amelioration of punishment, it is in legal effect imprisonment.").

■ This holding is consistent with the policies of consecutive sentencing. The power of a trial judge to impose consecutive sentences ensures that defendants committing separate and distinct violations of the law receive separate and distinct punishments. Otherwise defendants would escape the full impact of punishment for one of their offenses. *Frost v. State,* 336 Md. 125, 647 A.2d 106 (1994); *see also Anderson v. State,*

---

**4.** Had the trial judge sentenced appellant to split confinement, in case no. F–26102, a different result may have been achieved.

**5.** Probation and parole may be served simultaneously as readily as a jail term and probation.

There is nothing inherently inconsistent about the two custodial formats as they constitute two separate punishments for two separate crimes. *United States v. Laughlin,* 933 F.2d 786, 789 (9th Cir.1991).

554 S.W.2d 660, 661 (Tenn.Crim.App.1977) (holding trial court had authority to order sentence first imposed to be consecutive to subsequent conviction triggering revocation of suspended sentence). Accordingly, appellant's two year suspended sentence is stayed until he has fully served his sentence in case no. F–26381, through either confinement or parole. However, because appellant's sentence in case no. F–26381 was intervening to the two year suspended sentence, appellant will receive credit for having been on intensive probation from December 2, 1992, the date of sentencing in F–26102, until March 26, 1993, the date of sentencing in F–26381.

■ The substance of appellant's second argument is that the trial court's action, although termed revocation of probation, was in effect a revocation of parole and that only the Board of Paroles has the authority to revoke parole. We agree that the Board of Paroles maintains the exclusive authority in revoking parole. However, that is not the issue with which we are now faced. The issue is whether a trial court may revoke probation for pre-probation conduct occurring while appellant was on parole.

■ This Court has previously held that a "trial court has the authority to revoke probation if a defendant commits another crime after the entry of judgment but before the probationary term begins." *State v. Stone*, 880 S.W.2d 746, 748 (Tenn.Crim.App. 1994). Whether this authority exists while a convict is on parole is an issue of apparent first impression in Tennessee. However, if the trial court was unable to revoke probation either during incarceration or parole, the appellant would be provided a grace period in which his activity, no matter how heinous, would not affect his probationary release into society. We, therefore, hold that the trial court properly exercised its authority in revoking appellant's probation, in case no F–

26102, for pre-probation conduct occurring during a period of parole.[6]

**AFFIRMED.**

PEAY and WELLES, JJ., concur.

### ORDER DISMISSING PETITION TO REHEAR

The appellant, Earnest Malone, Jr., has petitioned this Court for a rehearing. In support of his petition, appellant cites that our holding is:

1. In conflict with *Howell v. State*, 569 S.W.2d 428 (Tenn.1978);

2. In conflict with Tenn.Code Ann. § 40–35–308; and

3. In violation of the double jeopardy clause of the federal and Tennessee constitutions.

For the following reasons, appellant's Petition to Rehear is denied.

### I

Our holding in *State v. Malone*, No. 01C01–9504–CC–00116 (Tenn.Crim.App. Nov. 15, 1995) does not contravene the principles enunciated in *Howell v. State, supra*. In *Howell*, the Supreme Court addressed whether sentences could be aggregated when determining parole eligibility. The Court held that a consecutively ordered sentence of *incarceration* commenced immediately upon an inmate's release, from a prior sentence, on parole. *Howell*, 569 S.W.2d at 433. Our decision in *Malone*, however, is limited to resolving when a *probationary term* commences. We held that a trial judge may toll the commencement of a *fully* suspended sentence until absolute completion of a consecutive sentence.[1]

■ In *Howell*, the Court was concerned that tolling subsequent consecutive sentences

---

**6.** This holding is consistent with a clear majority of Federal Circuits having addressed this issue. *See United States v. Williams*, 15 F.3d 1356 (6th Cir.1994) (holding district court has authority to revoke probation for pre-probation conduct, including pre-probation conduct of paroled convict); *see also United States v. Derewal*, 66 F.3d 52 (3rd Cir.1995); *United States v. Johnson*, 892 F.2d 369 (4th Cir.1989); *Knight v. United States*, 73 F.3d 117 (7th Cir.1995); *United States v. Daly*, 839 F.2d 598 (9th Cir.1988). *Contra United States v. Wright*, 744 F.2d 1127 (5th Cir.1984).

**1.** We held that, for purposes of determining when a probationary period commences, a sentence is not satisfied until a convict's release from both prison and parole supervision.

of incarceration until release from both confinement and parole would: (1) "erode" the concept of consecutive sentencing, and (2) "nullify consecutive life sentences." *Howell*, 569 S.W.2d at 432. With regard to determinate consecutive sentences and life sentences, *Howell* recognizes that actual periods of incarceration must run in succession. To hold otherwise would grant convicts sentenced to consecutive determinate sentences freedom from confinement during intervening periods of paroled release.[2] Moreover, convicts sentenced to consecutive life sentences and paroled, on count I, after 30 years would remain on parole for the remainder of their life and, therefore, commencement and incarceration for a subsequent consecutive life sentence would never accrue.[3] These results not only contravene the principles of sentencing but also the judge's intent in ordering consecutive sentences.

Our holding in *Malone* effectuated the trial judge's intent in sentencing appellant. We held that by running appellant's sentences consecutively, the trial judge intended to toll appellant's probationary period in Case No. F–26102 until such time that appellant had absolutely discharged his debt to society in Case No. F–26381. This holding neither "erodes" nor nullifies the concepts of consecutive sentencing as contemplated by *Howell*. Accordingly, it is unnecessary to extend

*Howell's* logic to issues of tolling probationary periods in order to preserve the principles of consecutive sentencing.

*Malone* is consistent with decisions in jurisdictions also running parole periods concurrently with the commencement of consecutive sentences of incarceration.[4] In *Cawley v. Arizona Board of Pardons and Paroles*, 145 Ariz. 387, 701 P.2d 1195 (App.1984), the court addressed whether periods of parole may be tolled while the offender is serving the underlying consecutive sentences. The court held, citing *Howell v. State*, 569 S.W.2d 428 (Tenn.1978), that "[w]hen an offender is paroled to the Department of Corrections or to another jurisdiction to begin serving a consecutive sentence, such parole time must run concurrently with the running of the subsequent sentence." *Cawley*, 145 Ariz. at 389, 701 P.2d at 1197.

The Arizona Court of Appeals, however, did not interpret *Cawley* as prohibiting sentencing judges from tolling the commencement of suspended sentences until release from both incarceration and parole supervision.[5] In *State v. Gandara*, 174 Ariz. 105, 847 P.2d 606 (App.1992), the same court that decided *Cawley* held that a suspended sentence commenced upon release from parole supervision as opposed to the date of physical release from incarceration. *Id.* at 108,

---

**2.** Service of two 35 year sentences ordered consecutively would run as follows:

| 17½ years | 17½ years | 17½ years | 17½ years |
|---|---|---|---|
| PENITENTIARY | PAROLE | PENITENTIARY | PAROLE |

**3.** Service of two life sentences ordered consecutively would run:

| 30 years (Count I) | Until death | 30 years (Count II) |
|---|---|---|
| PENITENTIARY | PAROLE | PENITENTIARY |

**4.** Jurisdictions recognizing a trial court's authority to toll suspended sentences until completion of both confinement and parole: *United States v. Williams*, 15 F.3d 1356 (6th Cir.1994); *United States v. Derewal*, 66 F.3d 52 (3rd Cir.1995); *United States v. Johnson*, 892 F.2d 369 (4th Cir. 1989); *Knight v. United States*, 73 F.3d 117 (7th Cir.1995); *United States v. Daly*, 839 F.2d 598 (9th Cir.1988); *United States v. Wright*, 744 F.2d 1127 (5th Cir.1984); *State v. Gandara*, 174 Ariz. 105, 847 P.2d 606 (App.1992); *State v. Department of Health and Soc. Serv.*, 133 Wis.2d 47, 393 N.W.2d 105 (1986); *State v. Martinez*, 108 N.M. 604, 775 P.2d 1321 (Ct.App.1989).

**5.** The New Mexico Supreme Court has held, as in *Howell*, "that in the case of consecutive sentencing, the parole period for each offense commences immediately after the period of imprisonment for that offense, and such parole time will run concurrently with the running of any subsequent basic sentence then being served." *Brock v. Sullivan, Warden, Pen. of New Mexico*, 105 N.M. 412, 414–15, 733 P.2d 860, 862–63 (1987).

However, *Brock* does not prohibit tolling commencement of suspended sentences until absolute discharge of a consecutive sentence of incarceration and any subsequent parole. *State v.*

 

847 P.2d at 609. The Court reasoned that consecutive sentences should not commence after indefinite prior sentences. *Id.* at 107, 847 P.2d at 608. Appellant may not qualify for parole or have his parole revoked leading to re-imprisonment. *Id.* at 108, 847 P.2d at 609. Therefore, to make certain that sentences are clear and not indefinite, suspended sentences must begin upon appellant's absolute discharge from his prior sentence. *Id.*

*Malone* merely recognizes and effectuates a trial judge's broad discretionary power in sentencing. Probationary sentences, unlike parole releases, are ordered by the trial judge during sentencing. *Howell's* application and logic does not impinge upon a trial judge's broad discretionary power to toll fully suspended sentences until the absolute discharge of a consecutive sentence.

## II

The substance of appellant's second argument is that by running his two year suspended sentence consecutively to the six year sentence, the trial court has made the two year sentence "more onerous." Tenn. Code Ann. § 40–35–308 (1990) prohibits the trial court from making "the conditions of supervision more onerous than those originally imposed." Running a sentence consecutively, however, does not alter a condition of probation supervision. *See* Tenn.Code Ann. § 40–35–303(d)(1)–(10) (1995 Supp.) (listing types of conditions referred to in Tenn.Code Ann. § 40–35–308). Moreover, by running the sentences consecutively, appellant is unable to escape the full impact of his separate convictions.

## III

We have reviewed appellant's contention that our holding violates the double jeopardy clause and find it devoid of merit. Contrary to appellant's assertion, he was not placed on probation twice for the same offense. Furthermore, if we were to accept his logic, trial courts would be precluded from running two fully suspended sentences consecutively.

*Martinez,* 108 N.M. 604, 775 P.2d 1321 (Ct.App.

## CONCLUSION

Accordingly, the appellant's Petition to Rehear is denied.

/s/ Paul G. Summers
    Paul G. Summers,
    Judge

/s/ John H. Peay
    John H. Peay
    Judge

/s/ David H. Welles
    David H. Welles,
    Judge